**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

KENNETH RYAN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

JPMORGAN CHASE & CO., JOHN EDMONDS, and JOHN DOEs Nos. 1-20,

Defendants.

Case No. _______________

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kenneth Ryan, on behalf of himself and all others similarly situated, alleges as follows against Defendants JPMorgan Chase & Co., John Edmonds, and John Does Nos. 1-20.

## I. SUMMARY OF THE ACTION

1. Defendants harmed investors by unlawfully manipulating the market for precious metal futures contracts and options from approximately January 1, 2009, until at least December 31, 2015. Plaintiff, on behalf of a class of similarly situated investors, files this action for Defendants' violations of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq*., Section 349 of New York's General Business Law, and the common law.

2. Defendants engaged in a long-running illicit scheme to "spoof" the market for futures contracts—contracts to enter into a future transaction at a predetermined price—and options on future contracts for gold, silver, platinum, and palladium. Defendants placed orders to buy and sell precious metal futures, only to cancel the orders before they could be executed. On October 9, 2018, Edmonds, a trader at JPMorgan, pleaded guilty to commodities fraud and conspiracy to manipulate the prices of precious metal futures. Edmonds admitted that he

"deployed this strategy hundreds of times with the knowledge and consent of his immediate supervisors."

3. Defendants' deliberate, concealed acts distorted the market for precious metal futures and futures options, causing prices to move artificially to Defendants' benefit and to Plaintiff's and class members' detriment. Plaintiff seeks appropriate relief through this action.

## II. PARTIES AND RELEVANT NON-PARTIES

### A. Plaintiff

4. Plaintiff Kenneth Ryan, a resident of Illinois, traded in COMEX silver and gold futures at various times during the period between January 1, 2009 and December 31, 2015 (the "Class Period"). Plaintiff entered into transactions for gold and silver futures at artificial prices that proximately resulted from Defendants' misconduct. Plaintiff consequently suffered economic injury by purchasing or selling futures or options at prices that Defendants had caused to be artificially shifted.

### B. Defendants

5. Defendant JPMorgan Chase & Co. is a multinational financial services company and investment bank incorporated under Delaware law and headquartered at 270 Park Avenue, New York, New York. JPMorgan has assets in excess of $2.5 trillion. It transacted in gold, palladium, platinum, and silver contracts on the New York Mercantile Exchange ("NYMEX") and Commodity Exchange ("COMEX") during the Class Period.

6. Defendant John Edmonds is a resident of Brooklyn, New York. He was employed by JPMorgan during the Class Period, and his duties during that time included executing trades related to precious metal securities. Edmonds has pleaded guilty to one count

of commodities fraud and one count of conspiracy to commit wire fraud, commodities fraud, commodities price manipulation, and illegal "spoofing."

7. Defendants John Does Nos. 1-20 are other traders employed by JPMorgan during the Class Period who engaged in or abetted the unlawful conduct set forth in this complaint. Plaintiff intends to seek leave to amend his complaint upon learning the identity of the John Doe Defendants.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367(a) and 7 U.S.C. § 1 *et seq*. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), since there are at least 100 persons in the proposed class, the combined claims of the proposed class members exceed $5,000,000, and Plaintiff and other class members are citizens of a state different from at least one defendant.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same operative facts as the federal law claims.

10. Venue in this District is proper under 28 U.S.C. § 1391(b), 18 U.S.C. § 1965, 7 U.S.C. § 1, *et seq*., and 7 U.S.C. § 25(c) because Defendants' unlawful course of conduct occurred in large part in this District and because it included violations of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq*., and the Commodity Futures Trading Commission's regulations promulgated thereunder, 17 C.F.R. § 1.1, *et seq*.

## IV. FACTUAL ALLEGATIONS

11. During the Class Period, Defendants sought to and did increase their investment gains, damaging Plaintiff and other investors in precious metal futures and options, by secretly manipulating that market through a practice called "spoofing."

**A. Relevant Background on Commodity Markets and Trading**

12. Commodity futures contracts are standardized contracts between two parties, a buyer and a seller, for the sale of a specified quantity of a commodity at a specified price on a specified date. The party who agrees to buy a commodity in the future is said to take a "long position," and the party who agrees to sell takes a "short position." A wide range of commodities are traded, from live cattle to 10-year Treasury bonds.

13. Futures markets, such as NYMEX and COMEX, operate pursuant to the Commodity Exchange Act. Futures markets mediate between the parties to a futures contract for purposes of establishing the contract and settling it. If, for example, a trader wanted to take a short position on a platinum futures contract, he would enter into the contract through COMEX, rather than contracting directly with a party taking a long position. If he then closed out the contract by delivering the platinum as provided in the futures contract, he would make delivery to COMEX, which would then make delivery to the party who took out the corresponding long position. Not all futures contracts, however, ultimately lead to delivery of the underlying commodity. Traders often take an offsetting position (*e.g.*, a long position to offset an equivalent short position) to hedge against their obligation to make or accept delivery.

14. Traders can also buy and sell "options" on futures contracts. An options contract gives a trader the option to buy or sell a commodity at a pre-established price during a specified time period.

15. Both NYMEX and COMEX are subsidiaries of the CME Group. Through its CME Globex platform, the CME Group permits 24-hour electronic trading from anywhere in the world in futures contracts and options for commodities traded on NYMEX and COMEX. CME Globex is accessible to individuals and to institutional traders.

16. Participants in commodities futures markets make trading decisions based upon the information they receive from other market participants. Such information includes the volume of futures contracts being entered into, as well as the prices and other terms specified in those contracts. When a trader decides whether to enter into a futures contract, he typically considers the contemporaneous price from other futures contracts for the purpose of evaluating what is a fair price.

**B. Defendants Engaged in Pervasive "Spoofing" to Manipulate Precious Metal Commodity Markets**

17. If a commodities trader can mislead other market participants into believing that trades took place when they actually did not, the trader can alter the market price for a futures contract so that it does not reflect the true state of the market. The trader can then benefit from this misinformation in various ways, including by entering into more profitable contracts than would otherwise have been possible.

18. The practice of placing electronic orders to buy or sell securities, only to cancel those orders soon afterward—before they can be executed—is called "spoofing." The DOJ characterizes spoofing as the "illegal practice of placing an order for a futures contract that the trader never intended to be executed in the first place." The DOJ explains that spoofed orders are often cancelled almost immediately and are never filled, and that they distort perceptions of the actual supply and demand for the security at issue. Thus, as the DOJ recognizes, the purpose and effect of spoofing is to "entice other traders" to make investment decisions on the basis of a "false perception of supply and demand."

19. During the Class Period, Defendants routinely placed orders for NYMEX and COMEX precious metals futures contracts and options with the intent of cancelling those orders before they could be executed.

20. As part of his guilty plea, Edmonds admitted that one example of his spoofing activity occurred on October 12, 2012, when he "placed an order to sell 402 silver futures contracts at the per-contract price of $33.610 with the intent to cancel the order before execution. The purpose of this Spoof Order was to induce other market participants to trade against [his] opposite-side order to buy silver futures contracts, which order [he] did want to execute. [His] Spoof Order did, in fact, cause other market participants to react and trade at prices, quantities, and times that they otherwise would not have traded, but for [his] Spoof Order . . . ."

21. Defendants' spoofing accomplished their intended objective. The cancelled orders conveyed misleading information about price and liquidity to other market participants like Plaintiff. Other market participants were thereby induced to take buying or selling positions that they otherwise would not have taken, but for Defendants' injection of false information into precious metal futures markets.

22. JPMorgan traders like Edmonds first learned of the spoofing scheme from more senior traders at JPMorgan. JPMorgan traders, including Edmonds, carried out their spoofing scheme with the knowledge and consent of their supervisors and of JPMorgan.

23. The number of unlawful spoofs that JPMorgan traders executed in precious metal futures markets is at least in the thousands. Edmonds deployed the spoofing scheme hundreds of times.

**C. <u>Defendants' Spoofing Harmed Plaintiff and Class Members</u>**

24. Spoofing causes the market price for a commodity futures contract or futures contract option to move to a higher or lower level than the price would otherwise be, if determined only by legitimate market activity.

25. As a result, when spoofing occurs on futures contracts or futures contract options, market participants trading on those securities are wrongfully induced to enter into transactions that cause them to sustain losses.

26. Plaintiff and class members were market participants who traded in futures contracts and options on futures contracts whose prices Defendants deliberately manipulated. Plaintiff and class members suffered ascertainable losses from Defendants' misconduct.

## V. CO-CONSPIRATOR, PRINCIPAL-AGENT, AND AIDING-AND-ABETTING ALLEGATIONS

27. At all relevant times, Edmonds and John Does Nos. 1-20 were agents or affiliates of JPMorgan and each other, and in committing the acts alleged herein, were acting within the course and scope of that agent-principal or affiliate relationship. Edmonds and John Does Nos. 1-20 acted under the supervision of JPMorgan and each other, and each routinely communicated with each other and with agents of JPMorgan about past spoofing misconduct and intended future spoofing misconduct. Each Defendant had actual knowledge of the wrongful acts of the other Defendants; ratified, approved, joined in, acquiesced, or authorized the wrongful acts of the other Defendants; and retained the benefits of those wrongful acts.

28. Each Defendant aided and abetted, encouraged, and rendered substantial assistance to each of the other Defendants in perpetrating their wrongful scheme on Plaintiff and the class. In acting, as alleged herein, to aid, abet, encourage, and substantially assist commission of the wrongful conduct set forth herein, each Defendant acted with an awareness of his or its primary wrongdoing and realized that his or its conduct would substantially aid the accomplishment of the wrongful acts and purposes set forth herein.

## VI. TOLLING OF THE STATUTES OF LIMITATIONS

29. By reason of their wrongful, hidden, and injurious spoofing conduct, Defendants are equitably estopped from asserting the statute of limitations.

30. Further, although Defendants had knowledge of the unlawful spoofing scheme and its injurious effects, they fraudulently concealed the scheme by failing to report it while continuing to execute the transactions from which they derived substantial benefit.

31. Defendants were aware that Plaintiff and class members did not know about Defendants' spoofing scheme. Despite reasonable diligence on their part, Plaintiff and class members were kept ignorant by Defendants of the factual bases for these claims for relief.

32. Plaintiff and class members reasonably relied to their detriment on Defendants' fraudulent concealment of their violations.

33. Plaintiff and class members did not discover, and exercising reasonable diligence could not have discovered, the facts establishing Defendants' unlawful spoofing scheme until the DOJ unsealed its indictment against Mr. Edmonds and his guilty plea on November 5, 2018. Because Plaintiff could not have reasonably discovered the facts constituting Defendants' violations until November 5, all applicable statutes of limitation were tolled until then and Defendants are estopped from claiming that any limitations periods have run.

## VII. CLASS ACTION ALLEGATIONS

34. Plaintiff brings this suit as a class action, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of a class of all persons and entities that purchased or sold a NYMEX platinum futures contract, NYMEX palladium contract, COMEX silver futures contract, COMEX gold futures contract, or an option on any such contract, during the period from January 1, 2009, to December 31, 2015.

35. Excluded from the class are Defendants, their parents, affiliates, subsidiaries, agents, legal representatives, predecessors, successors, assigns, employees, and immediate family members, and any entity in which JPMorgan has a controlling interest or which has a controlling interest in JPMorgan. Also excluded from this class are the judicial officers to whom this matter is assigned, their staff members, and their immediate family members.

36. Numerosity. The class members are too numerous to be practicably joined. The class members are identifiable from information and records in the possession, custody, or control of Defendants, NYMEX, COMEX, and the United States. Notice of this action can be provided to all members of the class, and the disposition of their claims in a single action will provide substantial benefits to all parties and the Court.

37. Typicality. Plaintiff's claims are typical of the claims of other members of the class. Plaintiff and each class member entered into precious metal futures contracts or traded in options on such contracts and were subject to the wrongful conduct alleged in this complaint.

38. Adequacy of Representation. Plaintiff is a member of the class and will fairly and adequately represent and protect the interests of the other class members. Plaintiff has no interests that conflict with the interests of the other class members.

39. Plaintiff's counsel are competent and experienced in class action and investor fraud litigation and will pursue this action vigorously.

40. Commonality and Predominance. Common questions of fact and law exist as to all members of the class and predominate over any questions pertaining to individual class members. Among the questions common to the class are:

a. Whether Defendants carried out a scheme to manipulate the price of futures contracts and options on futures contracts for platinum, palladium, silver, and gold;

b. Whether Defendants' scheme violates the Commodity Exchange Act;

c. Whether Defendants' scheme involved deceptive acts or practices that violate Section 349 of New York's General Business Law;

d. Whether Defendants were unjustly enriched by their scheme, warranting restitution or disgorgement to Plaintiff and the class; and

e. Whether Defendants' manipulation of the market for precious metal futures contracts and options on futures contracts damaged other market participants.

41. Superiority. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. The factual issues in this case are complex and detailed, extend over at least seven years, and relate to numerous, rapidly executed transactions. Absent a class action, most members of the class would likely find the cost of litigating their claims individually to be prohibitively high and would have no effective remedy. Class treatment of the common questions in this litigation will conserve the resources of the courts and promote efficiency and consistency of adjudication.

## VIII. CLAIMS FOR RELIEF

### COUNT 1
### Manipulation in Violation of the Commodity Exchange Act
### 7 U.S.C. § 1, *et seq*., 17 C.F.R. § 180.2
### (Against All Defendants)

42. Plaintiff incorporates the foregoing allegations by reference.

43. By their intentional conduct during the Class Period, Defendants each violated Sections 6(c)(3) and 9(a)(2) of the Commodity Exchange Act, 7 U.S.C. §§ 9(3), 13(a)(2), and Commodity Futures Trading Commission Rule 180.2, 17 C.F.R. § 180.2. These statutory and regulatory provisions prohibit manipulation of commodities markets.

44. During the Class Period, Defendants unlawfully manipulated of the prices of exchange-traded COMEX gold, COMEX silver, NYMEX palladium, and NYMEX platinum futures contracts and options on future contracts in violation of the Commodity Exchange Act.

45. Through their "spoofing" practice, Defendants placed orders for gold, palladium, platinum, and silver futures contracts or options on futures contracts, but cancelled those orders before they were executed.

46. The intent and effect of Defendants' practice was to inject inaccurate, misleading information into the markets for each respective commodity. As a result of this false information, the market price of each respective commodity moved up or down to an artificial level that did not reflect legitimate market information.

47. The artificial shift in the price of each commodity wrongfully induced Plaintiff and class members to make transactions that they would not otherwise have made. By carrying out transactions that were influenced by the artificial information Defendants introduced into the market, Plaintiff and class members suffered quantifiable economic losses or reduced profits.

48. Defendants' unlawful manipulation deprived Plaintiff and class members of the ability to trade in a market operated lawfully in accordance with the Commodity Exchange Act.

49. Under Section 22 of the Commodity Exchange Act, Plaintiff and class members are entitled to the actual damages they suffered as a result of Defendants' unlawful market manipulation. 7 U.S.C. § 25(a).

## COUNT 2
**Employment of Manipulative and Deceptive Devices in Violation of the Commodity Exchange Act**
**7 U.S.C. § 1, *et seq*., 17 C.F.R. § 180.1**
**(Against All Defendants)**

50. Plaintiff incorporates the foregoing allegations by reference.

51. By their intentional conduct during the Class Period, Defendants each violated Sections 6(c)(1) and 9(a)(2) of the Commodity Exchange Act, 7 U.S.C. §§ 9(1), 13(a)(2), and Commodity Futures Trading Commission Rule 180.1, 17 C.F.R. § 180.1. These statutory and regulatory provisions prohibit the employment of any manipulative or deceptive device or contrivance.

52. Defendants' scheme to "spoof" the markets for COMEX gold, COMEX silver, NYMEX palladium, and NYMEX platinum futures contracts and options on future contracts constitutes the use of a manipulative or deceptive device or contrivance.

53. Defendants' illicit employment of manipulative and deceptive devices resulted in quantifiable economic harm to Plaintiff and class members and deprived them of the ability to trade in a market operated lawfully in accordance with the Commodity Exchange Act.

54. Under Section 22 of the Commodity Exchange Act, Plaintiff and class members are entitled to the actual damages they suffered as a result of Defendants' illicit employment of manipulative and deceptive devices. 7 U.S.C. § 25(a).

**COUNT 3**
**Principal-Agent Liability for Violations of the Commodity Exchange Act**
**7 U.S.C. § 1, *et seq*.**
**(Against Defendant JPMorgan Chase & Co.)**

55. Plaintiff incorporates the foregoing allegations by reference.

56. Under Sections 2(a)(1)(B) and 13(b) of the Commodity Exchange Act, an entity is liable for the manipulative acts of its agents, representatives, or other persons acting on its behalf within the scope of their employment. 7 U.S.C. §§ 2(a)(1)(B), 13c(b).

57. At all relevant times, including when they engaged in illegal spoofing behavior, Edmonds and Does Nos. 1-20 were acting within the scope of their employment at JPMorgan.

58. Under Section 22 of the Commodity Exchange Act, JPMorgan is liable to Plaintiff and class members for the actual damages they suffered as a result of the misconduct of Edmonds and Does Nos. 1-20. 7 U.S.C. § 25(a).

**COUNT 4**
**Aiding and Abetting Liability for Violations of the Commodity Exchange Act**
**7 U.S.C. § 1, *et seq*.**
**(Against All Defendants)**

59. Plaintiff incorporates the foregoing allegations by reference.

60. Each Defendant knowingly aided, abetted, counseled, induced, or procured the violations alleged herein. Each Defendant thereby violated Sections 13(a) and 22(a)(1) of the Commodity Exchange Act, 7 U.S.C. §§ 13c(a), 25(a)(1).

61. Under Section 22 of the Commodity Exchange Act, Plaintiff and class members are entitled to the actual damages suffered as a result of each Defendants' aiding and abetting misconduct. 7 U.S.C. § 25(a).

**COUNT 5**
**Deceptive Acts and Practices**
**N.Y. Gen. Bus. Law § 349**
**(Against All Defendants)**

62. Plaintiff incorporates the foregoing allegations by reference.

63. Defendants' unlawful spoofing scheme was directed and caused injury to consumers of commodity futures contracts and options. Defendants' scheme harmed the public interest by depriving consumers of commodity futures contracts and options of the opportunity to participate in a lawful and honest marketplace.

64. Defendants' spoofing scheme originated and relied on transactions initiated in the State of New York.

65. Defendants' spoofing scheme involved deceptive acts or practices that violate Section 349 of New York's General Business Law. Defendants' scheme aimed to inject into the public markets materially false and misleading information concerning the pricing of COMEX gold futures contracts, COMEX silver futures contracts, NYMEX palladium futures contracts, NYMEX platinum futures contracts, and options on those contracts.

66. As a direct and proximate result of the materially false and misleading information Defendants introduced into the market, Plaintiff and class members suffered harm. Under Section 349(h) of New York's General Business Law, Plaintiff and class members are entitled to their actual damages, as well as reasonable attorneys' fees.

67. Additionally, as provided under Section 349(h), because Defendants willfully and knowingly violated the law with their spoofing scheme, Plaintiffs request punitive damages in an amount sufficient to penalize and deter Defendants.

## COUNT 6
## Unjust Enrichment
## New York Common Law
## (Against All Defendants)

68. Plaintiff incorporates the foregoing allegations by reference.

69. Defendants executed an illegal scheme that gave them the power to artificially shift the prices of precious metal futures contracts and options for Defendants' own benefit, and to the detriment of traders on the other side of transactions. This scheme enabled Defendants to enter into transactions to buy and sell precious metal futures contracts and options at prices that were more favorable to Defendants than the prices that would have prevailed absent Defendants' manipulation. Defendants' enrichment derived from their scheme came at the expense of Plaintiff and class members, who were induced to buy or sell at artificial prices that were as unfavorable to them as they were improperly favorable to Defendants.

70. Defendants' spoofing scheme has no legitimate justification and is inequitable. Defendants carried out the scheme for the sole purpose of unfairly reaping benefits for themselves. Moreover, they executed the scheme with full knowledge that it would tangibly harm other market participants.

71. Defendants unjustly enriched themselves and should be required to pay restitution or disgorge their ill-gotten gain to Plaintiff and class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

A. certifying this action for class treatment, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

B. awarding damages or restitution, including pre-judgment interest, on each Count in an amount to be determined at trial;

C. awarding reasonable attorneys' fees and costs of litigation; and

D. granting such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a jury trial for any counts for which a trial by jury is permitted by law.

Dated: November 16, 2018

Respectfully submitted,

**SAFIRSTEIN METCALF LLP**

By: /s/ *Elizabeth Metcalf*
Elizabeth Metcalf

Peter Safirstein
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
Telephone: (212) 201-2843
Email: psafirstein@safirsteinmetcalf.com

**GIRARD SHARP LLP**
Daniel C. Girard (*pro hac forthcoming)*
Jordan Elias (*pro hac forthcoming)*
Adam E. Polk (*pro hac forthcoming)*
James E. Richardson

711 Third Ave, 20th Floor
New York, New York 10017
Telephone: (212)798-0136
Facsimile: (212)557-2952
Email: dgirard@girardsharp.com
Email: jelias@girardsharp.com
Email: apolk@girardsharp.com
Email: jrichardson@girardsharp.com

601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**STEPHAN ZOURAS, LLP**
James B. Zouras (*pro hac forthcoming)*
Ryan F. Stephan (*pro hac forthcoming)*
Andrew C. Ficzko (*pro hac forthcoming)*
Teresa M. Becvar (*pro hac forthcoming)*

100 N. Riverside Plaza, Suite 2150
Chicago, IL 60606
Telephone: (312) 233-1550
Facsimile: (312) 233-1560
Email: jzouras@stephanzouras.com
Email: rstephan@stephanzouras.com
Email: aficzko@stephanzouras.com
Email: tbecvar@stephanzouras.com

*Attorneys for Plaintiff*